**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **DENNIS DAVID WATTS LARA,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-1207-R** |
| | ) | |
| **WARDEN OF DIAMONDBACK CORRECTIONAL FACILITY et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

## REPORT AND RECOMMENDATION

On May 26, 2026, Petitioner Dennis David Watts Lara, a noncitizen[1] and citizen of Venezuela,[2] proceeding *pro se*, filed a Petition for Writ of Habeas Corpus under 28 U.SC. § 2241 challenging his detention by the U.S. Immigration and Customs Enforcement (ICE). (ECF No. 1). United States District Judge David L. Russell referred this matter to the undersigned magistrate judge in accordance with 28 U.S.C. § 636(b)(1)(B)-(C). (ECF

---

[1] Unless quoting, this Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[2] The undersigned notes the conflicting evidence in the record that relates to Petitioner's citizenship. When Petitioner was placed into removal proceedings, the Department of Homeland Security (DHS) alleged that Petitioner was a "native of VENEZUELA and a citizen of VENEZUELA." (ECF No. 1-2:4) (sic). This allegation is consistent with Petitioner's Venezuelan passport, which indicates that his nationality is Venezuelan. (ECF No. 7-1:2). However, Petitioner was also issued a passport from Colombia, which identifies his nationality as Colombian. (ECF No. 7-1:1). On July 30, 2026, an Immigration Judge (IJ) ordered Petitioner removed to Venezuela or, in the alternative, Colombia. (ECF No. 11-1:3). Although Petitioner's Colombia passport creates confusion, there is enough direct and circumstantial evidence that Petitioner possesses Venezuelan citizenship. Accordingly, the undersigned finds that Petitioner is a citizen of Venezuela.

No. 3). On June 4, 2026, the undersigned ordered Respondents to file a response to the Petitioner. (ECF No. 5). On June 18, 2026, Respondents filed a Response. (ECF No. 7). On July 23, 2026, Petitioner filed a Reply (ECF No. 8).

For the reasons set forth below, the undersigned recommends that the Court **GRANT, IN PART**, the Petition, and order Respondents to provide Petitioner a bond hearing pursuant to 8 U.S.C. § 1226(a) within ten business days or otherwise to release him if there is no hearing within that time.

## I. BACKGROUND AND PETITIONER'S CLAIMS

On or around September 4, 2022, Petitioner entered the United States at an unknown location. (ECF Nos. 1-2:4, 8-1:12-13). On that date, DHS paroled Petitioner into the country under 8 U.S.C. § 1182(d)(5), with his parolee status set to expire on September 18, 2022. (ECF No. 8-1:13). On August 7, 2023, Petitioner affirmatively filed a Form I-589, Application for Asylum and Withholding of Removal (I-589) with the United States Citizenship and Immigration Service (USCIS). (ECF No. 1-2:9).

On December 31, 2025, while driving, Petitioner was stopped in Beckham County, Oklahoma, where an Oklahoma Highway Patrol officer was conducting routine inspections of commercial motor vehicles. (ECF No. 1-2:9). When the officer inspected Petitioner's vehicle, the officer reached out to an ICE officer to determine Petitioner's immigration status. (ECF No. 1-2:9). The ICE officer informed the Highway Patrol officer that Petitioner did not have lawful status and requested that he be detained. (ECF No. 1-2:9). The Highway Patrol officer detained Petitioner and transferred him to ICE custody. On January 2, 2026, ICE issued a warrant against Petitioner. (ECF No. 1-2:11). On that same date,

DHS placed Petitioner into removal proceedings before the Immigration Court pursuant to 8 U.S.C. § 1229a through the issuance of a Notice to Appear and charged him with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without having been admitted or paroled *or* who arrived in the United States at any time other than as designated by the Attorney General. (ECF No. 1-2:4). At some point, Petitioner was transferred to the Diamondback Correctional Facility in Watonga, Oklahoma.

On July 30, 2026, an IJ denied Petitioner's applications for relief and ordered him removed. (ECF No. 11-1:1-4). On August 28, 2026, Petitioner appealed the IJ's decision to the Board of Immigration Appeals (BIA), which remains pending.[3] *See* 8 C.F.R. § 1241.1(a) ("An order of removal . . . shall become final . . . [u]pon dismissal of an appeal by the Board of Immigration Appeals[.]").

On August 21, 2026, the Court ordered the parties to submit supplemental briefing as to whether Petitioner remained in detention, as an independent search through ICE's Online Detainee Locator did not indicate that Petitioner was detained. (ECF No. 9). Both parties submitted briefings that demonstrated that Petitioner remains detained at the Diamondback Correctional Facility. (ECF Nos. 10 & 11).

Petitioner filed the instant Petition on May 26, 2026, alleging that his continued detention is unlawful because: (1) his detention violates his rights under the Due Process Clause; (2) Petitioner was authorized to work in the United States and complied with

---

[3] *See* EOIR, Automated Case Information, *at* https://acis.eoir.justice.gov/en/caseInformation (last visited October 2, 2026).

immigration reporting requirements; (3) his detention has caused significant emotional and psychological hardship that has substantially interfered with his ability to prepare his immigration case; and (4) his compliance with reporting requirements demonstrates that he is not a flight risk. (ECF No. 1:8-9).

Petitioner asks the Court to immediately release him and to provide further relief that the Court considers to be just and proper.

## II. STANDARD OF REVIEW

To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## III. PETITIONER HAS SUFFICIENTLY CONFORMED WITH PRO SE PLEADING STANDARDS

In their Response, Respondents argue that Petitioner has failed to meet relevant pleading standards because his Petition fails to specifically specify all grounds for relief available to him, alongside sufficient facts that support each ground. (ECF No. 7:8-9). However, for the reasons articulated below, the Court should disagree with Respondents and find that Petitioner has sufficiently stated a claim of relief that is available to him.

The Court is permitted to liberally construe a *pro se* litigant's pleadings. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court may do so even with "the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."

*Hall v. Bellmon*, 935 F.2d at 1111. The Court may consider additional evidence outside of a *pro se* litigant's complaint, petition, or other application when conducting a broad reading of their pleadings. *Id.* at 1112.

However, there are restrictions on the Court's ability to construe a *pro se* litigant's pleadings. The Court cannot "assume the role of advocate for the pro se litigant." *Id.* at 1110. Allegations that are merely conclusionary in nature, without supporting arguments, are insufficient to support a pro se litigant's claim for relief. *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994); *see also United States v. MacCollom*, 426 U.S. 317, 327 (1976) (finding that the applicant made a "naked" and conclusory allegation of ineffective assistance of counsel without sufficient facts); *Ruark v. Gunter*, 958 F.3d 318, 319 (10th Cir. 1992) (finding similar). When a *pro se* litigant fails to do so, the Court "cannot fill the void by crafting arguments and performing the necessary legal research." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 841 (10th Cir. 2005).

Further, *pro se* litigants must still comply with the same rules of procedures that govern other litigants, including rules relating to habeas petitions. *Id.* at 841; *see also Mayle v. Felix*, 545 U.S. 644, 654 (2005)[4] ("A discrete set of Rules governs federal habeas proceedings launched by state prisoners."). For example, under Habeas Rule 2(c), a petitioner must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." *Mayle v. Felix*, 545 U.S. at 655. The purpose of this

---

[4] In *Mayle*, the Supreme Court of the United States (SCOTUS) refers to the Rules Governing Section 2254 and 2255 Proceedings. *See Mayle v. Felix,* 545 U.S. at 654. Although Petitioner filed a habeas petition under Section 2241, "[t]he Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241." *Whitmore v. Parker*, 484 F. App'x 227, 231 n.2 (10th Cir. 2012) (citing *Boutwell v. Keating*, 399 F.3d 1203, 1211 n.2 (10th Cir. 2005)).

rule is to allow district courts to determine whether it should order Respondents to "show cause why the writ should not be granted." *Id*. at 656.

Here, the undersigned finds that, under a liberal construction, Petitioner has sufficiently pled and argued for claim of relief. *Hall v. Bellmon*, 935 F.2d at 1110. In his Petition, Petitioner describes "Ground One" as:

> My continued detention violates due process while my immigration proceedings remain pending. I am currently detained at Diamondback Correctional Facility while my asylum case remains pending before the Immigration Court. [I] [p]reviously entered the United States under Parole Authorization and later filed an affirmative asylum application with USCIS. I also received my employment authorizations based upon my pending asylum applications. My immigration proceedings remain active, including pending proceedings before the Immigration Court. Despite having active immigration proceedings and a scheduled immigration hearing, I continue to remain detained in immigration custody. At the time immigration proceedings were initiated, my records reflected parole documentation and valid employment authorization issued by USCIS. Despite this, I was placed into immigration detention proceedings, alleging that I entered the United States without admission or parole. My immigration proceedings remain pending, and no final determination regarding those issues have been made by the Immigration Court.

(ECF No 1:8). In the section that requires him to state a specific request for relief, Petitioner writes:

> I respectfully request that this Court grant this Petition for Writ of Habeas Corpus and order my immediate release from Immigration detention. I further request any additional relief that this Court considers just and proper.

(ECF No 1:8). A liberal reading of these portions of the Petition demonstrates that Petitioner has sufficiently raised a ground for relief that is available to him. Petitioner has been detained for approximately nine months while his removal proceedings have remained pending. Petitioner's statement that his detention has continued throughout his

removal proceedings indicates that he has not yet been provided with bond hearing. These circumstances demonstrate that Petitioner is not raising a blanket and vague constitutional violation of Due Process; rather, Petitioner is alleging that his prolonged and continued detention without any chance for review is *specifically* what has violated his Due Process. *Contra United States v. Fisher*, 39 F.3d at 1147; *United States v. MacCollom*, 426 U.S. 327; *Ruark v. Gunter*, 958 F.3d at 319. Thus, there is no need for the Court to step in as Petitioner's "advocate" or "fill the void" in his Petition, as said Petition contains enough specificity to reasonably raise a Due Process issue. *Hall v. Bellmon*, 935 F.2d at 1110; *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d at 841. For these reasons, the undersigned is not persuaded with Respondents' argument that Petitioner failed to sufficiently raise a claim for relief. (ECF No. 7:8-9).

Therefore, Petitioner's pleadings are sufficient, and the undersigned will proceed with the adjudication of his Petition.[5]

---

[5] In their Response, Respondents also argue that Petitioner's Petition should be dismissed or struck from the record because Respondents allege that, despite alleging that he is *pro se*, neither Petitioner nor a qualified attorney or representative filed his Petition for him. (ECF No. 7:11-16). Respondents cite to the return address on the envelope used to file Petitioner's initial Petition, which is addressed to Petitioner and "Joseline Ocampo" at "4213 Davenport Str[eet], Houston, [Texas] 77051". (ECF No. 1-3). Respondents compare Petitioner's handwriting and signature in the Petition—which are printed—with his signature in other documents, which are in cursive. (ECF No. 7:15; *see also* ECF Nos. 1-2:2, 7-1:1-2, 7-2:1-3). Respondents argue that Joseline Ocampo is not an attorney and allege that this individual drafted and filed Petitioner's Petition, which is grounds for dismissal or for the Petition to be struck from the record. (ECF No. 7:11-16).

In his Reply, Petitioner explains that, because he had limited access to "printing, copying, postage, [and] reliable mail procedures, he requested "clerical assistance" from Joseline solely to assist with printing and mailing documents. (ECF No. 8:1). Petitioner continues that his "petition, facts, allegations, and request for relief are [his] own." (ECF No. 8:1). Alongside his Reply, Petitioner submitted a series of documents with his printed handwriting and signature, all of which match the handwriting and signature on his Petition. (ECF No. 8-1:6, 8, 17, 20-24). Most notably, Petitioner submitted a "Prohibited Items" worksheet that was prepared by a "mailroom

## IV. PETITIONER IS ENTITLED TO A BOND HEARING

### A. 8 U.S.C § 1226(a) Applies to Petitioner's Detention

While Petitioner does not allege that his detention violates the Immigration and Nationality Act (INA), Respondents claim that Petitioner is properly detained under 8 U.S.C. § 1225(b)(2). (ECF No. 7:5). Because it is relevant to determine whether his Due Process rights have been violated, the Court must first determine what statutory provision applies over Petitioner's detention. For the reasons discussed below, the undersigned

---

supervisor" at the Diamondback Correctional Facility. (ECF No. 8-1:29). This worksheet indicates that Petitioner attempted to mail "sticky notes" to Joseline Ocampo—whose original address matches the address on the original Petition's envelope—and displays Petitioner's printed signature. (ECF No. 8-1:29). Petitioner's signature on this worksheet, which he would have provided while detained, matches with other documents in the record that also provide a printed signature. *See* (ECF Nos. 1:10, 8:5, 10:2). Additionally, the envelope used to file Petitioner's Reply and supporting documents lists Petitioner's address at the Diamondback Correctional Facility. (ECF No. 8-2). Further, the envelope used to file Petitioner's supplemental briefing in regard to his detention status similarly lists the Diamondback Correctional Facility as Petitioner's return address. (ECF No. 10-2). The handwriting on each envelope matches Petitioner's printed handwriting and signature in other documents in the record. (ECF No. 10-2); *see also* (ECF No. 8-2).

Considering the record in its entirety, the undersigned is persuaded with Petitioner's explanation and finds that he has drafted and filed his own Petition. All three of Petitioner's main filings—his Petition, his Reply, and his supplemental briefing—have samples of Petitioner's printed handwriting and signature. These samples display handwriting that is consistent between all three filings. Based on Petitioner's explanation, it appears that Petitioner drafted his initial Petition, alongside all of his supporting evidence, and sent the Petition and documents to Joseline so that she could mail it to the Court. The record does not demonstrate that Joseline performed any other acts that could constitute improper legal representation, such as preparing Petitioner's Petition or forging his printed signature. Notably, Petitioner signed the Prohibited Items worksheet, and his printed signature is consistent with other examples throughout the record. It is unlikely that Petitioner would have mailed the Prohibited Items worksheet to Joseline for her to sign the document in his name to then have her mail the document back to Petitioner for him to file with the Court. For these reasons, the undersigned is unpersuaded with Respondents' arguments and allegations, and finds that Petitioner prepared the substantive aspects of his Petition *pro se*.

recommends that the Court find that Petitioner's detention is controlled by 8 U.S.C. § 1226(a).

Under the INA, the detention of noncitizens who are classified as "applicants for admission"[6] and "seeking admission" is mandatory under 8 U.S.C. § 1225(b)(2)(A). By contrast, 8 U.S.C. § 1226(a) allows for the arrest of noncitizens on a warrant and grants ICE the discretion to keep a noncitizen detained or to release the noncitizen on bond.[7]

The Tenth Circuit has held "that noncitizens who entered the United States and were thereafter detained in the interior of the country are usually subject to § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A)." *Santillan Quiroz v. Mullin*, 180 F.4th 1226, 1237 (10th Cir. 2026). In reading the statutory text and the context of the statute's creation, the court reasoned that:

> once a noncitizen has entered unlawfully, no amount of legal maneuvering allows him to go back in time and make his initial entry lawful. The only time a noncitizen can be said to be seeking admission is when he is seeking to enter the United States at the border. Since § 1225(b)(2)(A) applies only to those seeking admission, § 1225(b)(2)(A) is likewise limited to the border.

---

[6] 8 U.S.C. § 1225(a)(1) describes an "applicant for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States." The statute defines "admission" and "admitted" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13).

[7] The regulations accompanying the statute explain the various levels of review for a bond determination. An ICE officer makes the initial detention or release determination, and the noncitizen bears the burden of "demonstrat[ing] to the satisfaction of the officer that . . . release would not pose a danger to property or persons, and that the noncitizen is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8). If the officer determines the noncitizen should be detained, the noncitizen can seek review of that decision at a bond hearing before an Immigration Judge *Id.* § 236.1(d)(1). An Immigration Judges' decision to detain may be further appealed to the BIA. *Id.* § 236.1(d)(3). *See Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention.") (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

*Santillan Quiroz v. Mullin*, 180 F.4th at 1239. Here, Petitioner was detained in the interior of the United States are being paroled into the country. (ECF No. 1-2:3). As a result, pursuant to *Santillan Quiroz*, Petitioner's detention is under 8 U.S.C. § 1226(a) and he is entitled to a bond hearing. Despite this, Petitioner has not been granted a bond hearing as provided by 8 U.S.C. § 1226(a).

Accordingly, the undersigned finds that Petitioner has demonstrated that he is in custody in violation of the laws of the United States, that he is entitled to habeas relief under 28 U.S.C. § 2241(c)(3), and that bond hearing is the appropriate remedy. *See Santillan Quiroz v. Mullin*, 180 F.4th 1251, n.13; *see also Singh v. Cerna*, No. CIV-26-757-R, 2026 WL 1973892, at *1 (W.D. Okla. July 8, 2026).

### B. Petitioner's Current Detention Violates Due Process

Petitioner alleges that his continued and prolonged detention violates Due Process. (ECF No. 1:6). For the reasons articulated below, the undersigned recommends that the Court find that Petitioner's Due Process rights have been violated.

The Fifth Amendment's Due Process Clause protects all persons within the United States from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. It is well established that the Due Process Clause applies to noncitizens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. at 693. Courts have adjudicated procedural Due Process claims in two steps: (1) if there is a protected liberty interest, and (2) if so, what procedures are necessary to ensure that the deprivation of that protected liberty interest conforms with Due Process. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "Freedom

from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. at 690. Indeed, "due process requires that, whenever the Government detains somebody, it must have a good reason for doing so." *Santillan Quiroz v. Mullin*, 180 F.4th at 1250.

Here, as a noncitizen facing discretionary detention or release while removal proceedings are pending, Petitioner has a liberty interest in freedom from immigration detention. Additionally, because he is detained under 8 U.S.C. § 1226(a), it is necessary to afford him the opportunity to be heard regarding his release to ensure that any deprivation of his protected liberty interest conforms with Due Process. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.") (citation modified). Thus, Petitioner's procedural Due Process rights have been violated by Respondents' decision to detain him under 8 U.S.C. § 1225(b)(2) without a bond hearing.

Additionally, although finding it unnecessary to determine whether the government's position is unconstitutional, the Tenth Circuit observed that "[t]he mandatory detention of potentially millions of noncitizens without the potential for bond raises" "serious constitutional concerns." *See Santillan Quiroz v. Mullin*, 180 F.4th at 1249-50. District courts in this Circuit have directly addressed this issue, holding:

> Because this Court holds that § 1226 governs Petitioner's detention, the due process owed to Petitioner is that provided for in § 1226—namely, an individualized bond hearing before an IJ [immigration judge]. Having erroneously concluded that Petitioner was mandatorily detained under § 1225, the IJ in Petitioner's case declined to make an individualized assessment of whether Petitioner posed any danger to the community,

> threatened national security, or was at risk of flight. Thereafter, Petitioner's continued detention without the bond hearing that should have been provided to him pursuant to § 1226 constitutes an ongoing violation of his constitutional right to due process.

*Velasquez Salazar v. Dedos*, 806 F. Supp. 3d 1231, 1241 (D.N.M. 2025) (internal citation omitted); *see also Requejo Roman v. Castro*, 816 F. Supp. 3d 1267, 1282 (D.N.M. 2026) ("Classifying Petitioner under § 1225 has . . . deprived him of due process by denying him the opportunity to be heard at [a bond] hearing.") (citation modified); *Facio v. Baltazar*, No. 25-CV-03592-CYC, 2025 WL 3559128, at *3 (D. Colo. Dec. 12, 2025) ("[T]he Court agrees with other courts that have, against substantially similar factual backgrounds, concluded that detention without a bond hearing amounts to a due process violation.") (citation modified); *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 785 (E.D. Mich. Aug. 29, 2025) ("The discretionary bond framework under Section 1226(a) requires a bond hearing to make an individualized custody determination – a hearing the IJ did not conduct. Therefore, without first evaluating Lopez-Campos' risk of flight or dangerousness, his detention is a violation of his due process rights."), *aff'd*, 175 F.4th 713, 734 (6th Cir. 2026) ("find[ing] no reason to disturb" the district courts' holdings "that the government's detention of Petitioners without bond under § 1226(a) was a deprivation of liberty that violated Petitioners' due process rights").

Therefore, the undersigned finds that Respondents must provide Petitioner with a bond hearing, which would be the appropriate remedy for the violation of his Due Process rights.

## V. RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the foregoing reasons, the undersigned recommends that the Court **GRANT, IN PART**, the Petition for habeas relief by ordering Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) within ten business days or otherwise release Petitioner if he has not received a lawful bond hearing within that period.[8] It is further recommended that the Court order Respondents to certify compliance by filing a status report within seven business days of the Court's order.

The parties may object to this Report and Recommendation under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Any objection must be filed not later than **October 9, 2026**. The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## VI. STATUS OF REFERRAL

This Report and Recommendation disposes of all issues and terminates the referral to the undersigned Magistrate Judge in the captioned matter.

ENTERED on October 2, 2026.

Shon T. Erwin
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE

[8] With this recommendation, the undersigned recommends the Court to not consider Petitioner's remaining claims for relief. *See also Ramos Perez v. Grant*, No. CIV-26-721-D, 2026 WL 2033144, at *2 n.2 (declining to address the petitioner's remaining claims after ordering a bond hearing).